# In the United States Court of Federal Claims

No. 19-711C
(Filed: September 9, 2021)*
**\*Opinion originally filed under seal on August 30, 2021**

<table>
<tr><td>

LAND SHARK SHREDDING, LLC,

                      Plaintiff,

v.

THE UNITED STATES,

                      Defendant.
</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)
</td><td>

Bid Protest; SDVOSB Set Aside;<br>Solicitation Cancellation; Standing;<br>Asset Sales; Actual Bidder; Successor-<br>in-Interest
</td></tr>
</table>

*Joseph A. Whitcomb,* Denver, CO, for plaintiff.

*Daniel B. Volk,* Civil Division, United States Department of Justice, Washington, D.C., with whom were *Brian M. Boynton*, Acting Assistant Attorney General, *Martin F. Hockey, Jr.*, Acting Director, and *L. Misha Preheim*, Assistant Director, for defendant. *Natica Chapman Neely*, Washington, D.C., of counsel.

## OPINION

**FIRESTONE**, *Senior Judge.*

    In this bid protest, plaintiff Land Shark Shredding, LLC, a service-disabled veteran-owned small business (SDVOSB), challenges the Department of Veterans Affairs' (VA) cancellation of a solicitation for document shredding services that was set aside for SDVOSBs. After completion of briefing on the government's motion to dismiss and the parties' cross motions for judgment on the administrative record, this case was stayed pending Land Shark's appeals to the United States Court of Appeals for the Federal Circuit of other bid protest actions involving issues related to this case.

Following the Federal Circuit's January 11, 2021 decisions on those appeals, the court ordered supplemental briefing and held oral argument on June 3, 2021.

At oral argument, the parties informed the court that Land Shark had recently sold its name, its assets, and its government contracting and commercial business interests to two companies, and had changed its name to Disabled Veterans Security, LLC. The parties informed the court that these transactions would require, at minimum, amending the case caption. The government also raised questions of whether any entity had standing to bring this case. The court ordered supplemental briefing on these issues.

Now pending before the court are two new motions. Land Shark moves to substitute Disabled Veterans Security, LLC as the real party at interest in this case or, alternatively, amend the case caption to reflect Land Shark's new name. Mot. to Substitute at 1, ECF No. 43. The government has filed a second motion to dismiss, agreeing that the case caption should be amended but arguing that the case should be dismissed because Disabled Veterans is not an interested party and therefore lacks standing. 2d Mot. to Dismiss at 4-5, ECF No. 48.

For the reasons that follow, Land Shark's request that the case caption be amended to reflect its current name, Disabled Veterans Security, LLC is **GRANTED**. However, because Disabled Veterans is not a successor-in-interest to Land Shark for purposes of the shredding solicitation at issue and therefore lacks interested party status, the government's second motion to dismiss is **GRANTED**. The government's first motion to dismiss, ECF No. 14, the parties' cross motions for judgment on the administrative

2

record, ECF Nos. 12, 14, and Land Shark's supplemental motion for judgment on the administrative record, ECF No. 25, are **DISMISSED AS MOOT**.

## I.    BACKGROUND

### A.    The Solicitation and Quotations

On March 15, 2019, the VA issued Solicitation No. 36C24119Q0163, requesting quotations for commercial document shredding services for the VA's Boston Medical Center and associated facilities under a firm, fixed-price contract to be performed for a one-year base period with four one-year options.  AR207, AR210, ECF No. 11.  For this procurement, the VA was required by 38 U.S.C. § 8127(d) to provide preferences to veteran-owned small businesses.  Under what is known as the "Rule of Two," the VA must restrict competition for a contract to SDVOSBs or veteran-owned small businesses (VOSBs) "if the contracting officer has a reasonable expectation that two or more [SDVOSBs or VOSBs] will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States."  *Id.*  If the Rule of Two is satisfied, the contracting officer must issue the solicitation as an SDVOSB or VOSB set-aside.  *Land Shark Shredding, LLC v. United States*, 842 F. App'x 594, 597 (Fed. Cir. 2021).

The shredding services procurement in this case was originally set aside under the Rule of Two for VOSBs and was later changed to an SDVOSB set-aside by amendment.  AR210, AR272, AR295.  The evaluation criteria for submitted quotations included price, past performance, and technical considerations.  AR211-12.  Quotations were to be evaluated in accordance with Federal Acquisition Regulation (FAR) Part 13, *see* AR211,

which provides the contracting officer "broad discretion in fashioning suitable evaluation procedures" on the basis established in the solicitation, 48 C.F.R. § 13.106-2(b). Quotations were due by March 28, 2019 at 12:00 p.m. eastern standard time.  AR215.

The VA received three quotations from SDVOSBs in response to the solicitation, but only Land Shark's quotation was timely.  *See* AR470.  Land Shark's proposed prices were close to double the VA's independent government cost estimate (IGCE)[1] for the shredding services, and far exceeded the (untimely) price proposals from the other SDVOSBs.  *See* AR274 (revised IGCE), AR340-46 (Land Shark's price proposal), AR407-21 (untimely proposal from Document Security Solutions), AR441-46 (untimely proposal from Minuteman Technology Services).

The solicitation also contained technical requirements regarding subcontracting. For offerors outside of the Boston, MA area intending to self-perform without subcontractors, the solicitation required the offeror to include an explanation as to how it would accomplish the shredding work in Massachusetts.  AR212.  Land Shark, based in Bowling Green, Kentucky, AR384, stated that it intended "to self-perform all contract work," AR376.  Land Shark's quotation included 58 pages of general information regarding how it would perform, AR347-405, but did not include a separate explanation as to how it would accomplish the shredding work in Massachusetts, *see* AR472.

---

[1] "Generally, independent government estimates represent the agency's best estimate of the most reasonable current price of the products or services being procured." *Parcel 49C Ltd. P'ship v. United States*, 130 Fed. Cl. 109, 128 (2016) (internal alterations and quotation omitted).  FAR 13.106-3(a)(2)(vi) permits an agency to use the IGCE in evaluating price reasonableness.

Land Shark's bid also contained conflicting information as to whether Land Shark would—despite its intent to self-perform—use subcontractors. AR376 ("LSS reserves the right (when necessary) to utilize the services of a qualified Teaming Partner/Subcontractor."), AR377 ("However, we still must properly compensate our subcontractor. Therefore, to remain compliant with 13 CFR 125.6 we have to double what a subcontractor charges us – which results in a higher price . . . ."). For offerors planning to subcontract some or all of the work, the solicitation required the offeror to "please provide the name and address([e]s) of all subcontractor(s), a description of the planned subcontracting effort, and the subcontractor's experience to meet the requirements of the PWS [(performance work statement)]." AR212 (emphasis omitted). Land Shark did not include this information in its quotation. *See* AR472.

**B.    The Contracting Officer's Cancellation Decision**

In an April 24, 2019 memorandum, the contracting officer cancelled the solicitation, citing pricing and technical deficiencies in Land Shark's quotation, the only timely bid. AR470. First, the contracting officer concluded that the pricing proposal submitted by Land Shark was not "fair and reasonable." AR471. The contracting officer noted that the pricing submitted by Land Shark was nearly double the agency's available funding and the IGCE and far exceeded the other untimely SDVOSB quotes received in response to the solicitation. *Id.*

As for the technical portions of Land Shark's bid, the contracting officer determined that Land Shark had shown that "it has the experience to meet the requirement." AR472. However, the contracting officer determined that Land Shark's

quotation contained "inconsistent information" regarding whether Land Shark would self-perform or use subcontractors. *Id.* The contracting officer found that, if it intended to self-perform, Land Shark "did not indicate how it would accomplish document shredding in Massachusetts as required by the solicitation." *Id.* The contracting officer further found that, if it intended to use subcontractors, "Land Shark did not provide the name and address(es) of the subcontractor(s), a description of the planned subcontracting effort, and the subcontractor's experience to meet the requirements of the PWS as required by the solicitation." *Id.* The contracting officer therefore concluded that Land Shark's technical quote was unacceptable. *Id.* For these reasons, the contracting officer cancelled the solicitation.  AR473.

### C.    The Parties' Initial Briefing in This Court

On May 14, 2019, Land Shark filed a complaint in this court, challenging the cancellation of the solicitation on the grounds that the contracting officer's determination regarding Land Shark's pricing lacked a rational basis and violated the Rule of Two. *See* Compl. ¶¶ 27-50, ECF No. 1. On June 19, 2019, Land Shark filed a motion for judgment on the administrative record, challenging only the pricing aspect of the contracting officer's cancellation decision and arguing that, under the Rule of Two, the contracting officer was required to award Land Shark the shredding contract. *See* Pl.'s Mot. at 3-5, ECF No. 12.

On July 12, 2019, the government filed its first motion to dismiss combined with a cross motion for judgment on the administrative record and response to Land Shark's motion. Def.'s Cross-Mot. at 1, 3, ECF No. 14. The government argued, inter alia, that

Land Shark had failed to challenge the contracting officer's determination that Land Shark's quotation was technically deficient, which disqualified Land Shark's quotation from consideration and served as a basis to dismiss Land Shark's claim for lack of standing. *Id.* at 4-7.

As part of the briefing that followed, Land Shark requested that it be permitted to amend its complaint to challenge the contracting officer's findings regarding technical unacceptability. *See* Order at 1, ECF No. 19. The court allowed Land Shark to do so and ordered that the parties submit supplemental briefing. *Id.*; *see* Am. Compl. at 13, ECF No. 24 (adding a count challenging the technical acceptability determination).

The parties' supplemental briefing was completed on September 24, 2019. In its briefs, Land Shark generally argued that because its quotation was made at a fair and reasonable price, the government was required by the Rule of Two to award Land Shark the shredding contract. *See, e.g.*, Pl.'s Mot. at 8-14. Although conceding that its quotation did not include specific subcontractor information, Land Shark contended that its proposal met all of the solicitation's technical requirements. *See, e.g.*, Pl.'s Supp. Reply at 1-4, ECF No. 27. For its part, the government argued that because Land Shark's proposal did not meet the technical requirements of the solicitation, Land Shark did not have the requisite direct economic interest to bring this case and for this reason lacked standing. *See, e.g.*, Def.'s Cross-Mot. at 4-7. The government further argued that the VA's cancellation of the solicitation was rational based on the noted pricing and technical defects in Land Shark's quotation. *See, e.g.*, *id.* at 8-14.

### D.     Related Federal Circuit Decisions and Supplemental Briefs

Following briefing in this case, Land Shark filed notices of appeal in two other bid protests before this court involving the application of the Rule of Two.[2]  *See* Order, ECF No. 31.  On December 18, 2019, this court stayed this case pending the Federal Circuit's decisions in Land Shark's appeals.  *Id.*

On January 11, 2021, the Federal Circuit issued decisions rejecting Land Shark's two appeals.  *Land Shark Shredding, LLC v. United States*, 842 F. App'x 589, 590 (Fed. Cir. 2021); *Land Shark Shredding, LLC v. United States*, 842 F. App'x 594, 595 (Fed. Cir. 2021).  The parties then submitted a second round of supplemental briefing regarding the effect of these decisions on Land Shark's claims.  *See generally* Pl.'s 2d Supp. Br., ECF No. 36; Def.'s 2d Supp. Br., ECF No. 37.

### E.     Additional Briefing Regarding the Sale of Land Shark's Name, Assets and Business Interests

The court held oral argument on June 3, 2021.  At the oral argument, the parties informed the court that Land Shark had recently sold its name, assets, and business interests, and that these transactions raised questions regarding whether the case caption should be amended to reflect Land Shark's new name, Disabled Veterans Security, LLC; whether a new party should be substituted as the real party in interest; and whether any

---

[2] Land Shark has also filed three other bid protests before this court that are still pending, making similar allegations regarding the Rule of Two.  These cases are currently stayed pending the resolution of this and other cases.  *See* Order Staying Case, *Land Shark Shredding, LLC v. United States*, Nos. 19-1719C, 19-1741C, ECF No. 10; Order, *Land Shark Shredding, LLC v. United States*, No. 19-1852, ECF No. 10.

entity had standing to bring this case. *See* Tr. 6:17-7:12, 13:11-16:25, ECF No. 47. Accordingly, the court ordered another round of supplemental briefs. Order, ECF No. 42.

On June 14, 2021, Land Shark moved to substitute Disabled Veterans Security, LLC as the plaintiff or, in the alternative, to amend the case caption to reflect its new name. Mot. to Substitute at 1. Land Shark attaches to its supporting briefs documents regarding its name change and the sale of its assets. *Id.*, Exs. 1-9; Pl.'s Resp. & Reply, Ex. 1, ECF No. 50. The following facts are taken from Land Shark's and the government's briefs on this issue and are undisputed.

Land Shark explains that on December 15, 2020, Dunlap Government Services, LLC, a certified SDVOSB, acquired from Land Shark all assets necessary to perform Land Shark's government contracting business. Mot. to Substitute at 2; *see also id.*, Ex. 1 at 1 (Asset Purchase Agreement); *id.*, Ex. 1 at 34 (Second Amendment to Asset Purchase Agreement noting that Land Shark intended to sell "all assets . . . necessary to perform" its federal contracting business). These assets included equipment, such as shredding trucks, *id.*, Ex. 1 at 34-35 (Second Amendment to Asset Purchase Agreement listing assets), as well as Land Shark's ongoing government contracts, *id.* at 3, Ex. 1 at 1 (Section 1.01), Ex. 2 at 1, 11-20 (Novation Agreement listing contracts). The sale excluded contested government contracts including the one at issue in this case, *id.* at 3, Ex. 1 at 1 (Section 1.02), 20 (Schedule 1.02), but gave Dunlap the option to purchase any awarded contested government contracts from Land Shark, *id.*, Ex. 1 at 9-10 (Section 8.07). Under the agreement, Land Shark is barred from seeking new shredding contracts with the federal government for five years. *Id.* at 3, Ex. 1 at 8-9 (Section 8.04).

Then, through another asset purchase agreement dated December 31, 2020, Land Shark sold its commercial shredding business, including its name and "all of its remaining assets," to Underground Vaults and Storage, Inc. Pl.'s Resp. & Reply at 2 n.2, Ex. 1 at 6; *see also* 2d Mot. to Dismiss at 1-4. According to a press release about this sale, Land Shark's Vice President of Operations and five other Land Shark employees now work for Underground Vaults. 2d Mot. to Dismiss at 1 (quoting a January 4, 2021 press release by Underground Vaults).

Following these sales, on January 22, 2021 Land Shark changed its name to Disabled Veterans Security, LLC. Mot. to Substitute at 3, Ex. 8 (Articles of Amendment changing Land Shark's name). According to Land Shark, Disabled Veterans is in the process of verifying its SDVOSB status. Pl.'s Resp. & Reply at 3. Like Land Shark, Disabled Veterans is a single-member limited liability corporation owned by Donald Gerard, Jr. *Id.* at 7; Mot. to Substitute at 1.

Because of these various transactions, Land Shark moves to substitute Disabled Veterans as the real party in interest or to amend the case caption to reflect its name change. Mot. to Substitute at 1. It argues that substitution or amendment is appropriate because the name change "resulted in no actual change to its organizational structure," *id.* at 5, and, therefore, nothing prevents Disabled Veterans "from continuing the present case" or from competing for the shredding solicitation at issue, *id.* at 1.

On June 25, 2021, the government filed a second motion to dismiss and response to Land Shark's motion to substitute. The government agrees with Land Shark that the case caption should be amended to reflect Land Shark's new name. 2d Mot. to Dismiss

at 4. However, the government argues that Land Shark—now operating as Disabled Veterans—lacks standing to bring this case because, due to the sale of its assets and businesses to Underground Vaults and Dunlap, "no entity remains in a position where it could fill the shoes of the former Land Shark Shredding, LLC with respect to the quotation it submitted in March 2019." *Id.* at 7. The government also points out that "Disabled Veterans Security, LLC has not been verified as an SDVOSB," and would therefore be ineligible to compete. *Id.* at 8.

In response, Land Shark argues that Disabled Veterans may step into the shoes of Land Shark because Disabled Veterans has the same corporate structure and leadership. Pl.'s Resp. & Reply at 7. Land Shark further argues that Disabled Veterans can satisfy the terms of Land Shark's prior quotation because its organizational structure remains the same, because it can "purchase necessary equipment," and because it "intends to subcontract" the shredding work. *Id.*

Briefing was completed on August 10, 2021. The court has determined that oral argument is not necessary.

## II.    LEGAL STANDARDS

Standing in this case is framed by 28 U.S.C. § 1491(b)(1), which provides this court jurisdiction over bid protests. *Asset Prot. & Sec. Servs., LP v. United States*, 5 F.4th 1361, 1364 (Fed. Cir. 2021). Under § 1491(b)(1), bid protests may only be brought by "interested parties" that are prejudiced by the procuring agency's action. *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018).

To demonstrate that it is an "interested party," a plaintiff must show that it "(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest" in the procurement. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (internal quotation omitted). As to the first requirement, where a plaintiff is not an "actual bidder" on the solicitation, a plaintiff may nonetheless possess standing as a "complete successor-in-interest" that can "stand in the shoes" of the actual bidder. *Universal Prot. Serv., LP v. United States*, 126 Fed. Cl. 173, 187 (2016); *L-3 Commc'ns Integrated Sys., LP v. United States*, 84 Fed. Cl. 768, 779 (2008) (citing *Ala. Aircraft Indus., Inc. v. United States*, 83 Fed. Cl. 666, 682 (2008), *rev'd on other grounds*, 586 F.3d 1372 (Fed. Cir. 2009)); *Centerline Logistics Corp. v. United States*, 148 Fed. Cl. 332, 336 (2020). As to the second requirement, to prove a "direct economic interest" in bid protest cases challenging the cancellation of a procurement, a plaintiff must establish that it had a "substantial chance" of receiving the contract but for the alleged errors in the procurement process. *Veterans Electric, LLC v. United States*, 138 Fed. Cl. 781, 790 (2018).

Whether a plaintiff has standing is a jurisdictional issue, and the plaintiff bears the burden of proving standing to sue. *Universal Prot.*, 126 Fed. Cl. at 184-85. When assessing standing, "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). However, where jurisdictional facts are in dispute, a plaintiff must establish those facts by a preponderance of the evidence. *Sci. Applications Int'l Corp. v. United States*, 102 Fed. Cl. 644, 651

(2011).  Although most standing cases consider whether a plaintiff has standing when filing suit, an "actual controversy" must exist through "all stages" of the litigation. *Acetris Health, LLC v. United States*, 949 F.3d 719, 726 (Fed. Cir. 2020) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013)).  The court therefore may consider post-filing evidence in assessing jurisdiction.  *See id.*

## III.   DISCUSSION

As an initial matter, both parties agree that the case caption should be amended to reflect Land Shark's legally changed name, Disabled Veterans Security, LLC.  Mot. to Substitute at 1, Ex. 8; 2d Mot. to Dismiss at 4-5.  The court agrees that amending the case caption, rather than substituting Disabled Veterans as a party, is appropriate.  Land Shark retained its interest in this case when the contested solicitation was excluded from the asset sale to Dunlap, and then changed its name to Disabled Veterans.  Mot. to Substitute at 3, Ex. 1 at 1 (Section 1.02), Ex. 8.  Even though Dunlap may purchase any contract awarded out of the contested solicitation, *id.*, Ex. 1 at 9 (Section 8.07), neither party argues that Dunlap (or Underground Vaults) can currently claim an interest in this case, *see* 2d Mot. to Dismiss at 5.  The court therefore agrees with the parties that Land Shark, now operating under the name Disabled Veterans Security, LLC, continues to be the real party in interest.  *See id.*; Pl.'s Resp. & Reply at 1.  Accordingly, Land Shark's motion to amend the case caption to reflect this new name, the alternative relief requested in its motion to substitute, is granted.

The court now turns to the question of whether Disabled Veterans has standing as an interested party to bring this case.  In its motion to dismiss, the government argues that

13

Disabled Veterans does not satisfy either prong of the "interested party" test because Disabled Veterans (1) was not an actual bidder on the March 2019 shredding solicitation and cannot establish that it is a complete successor-in-interest to Land Shark, and (2) also cannot establish that it stands a substantial chance of contract award. 2d Mot. to Dismiss at 6-9. Land Shark admits that Disabled Veterans is not an actual bidder on the solicitation or a complete successor-in-interest to Land Shark, but argues that it can nevertheless step into the shoes of Land Shark, for purposes of this litigation, because it has the same corporate structure, would honor the price listed on Land Shark's quotation, has the same technical capabilities as Land Shark, may purchase any necessary equipment to perform the contract, and can subcontract the work. Pl.'s Resp. & Reply at 5-9.

After careful consideration of these arguments, the court agrees with the government that Land Shark, now operating as Disabled Veterans, lacks standing as an interested party to continue this lawsuit.[3] It is undisputed that Disabled Veterans was not an "actual or prospective bidder" on the solicitation at issue in this case, as required to

---

[3] The United States Supreme Court has stated that "[t]he doctrine of standing generally assesses whether [the requisite interest in a dispute] exists at the outset [of the litigation], while the doctrine of mootness considers whether it exists throughout the proceedings." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). Because the court is evaluating whether Disabled Veterans has demonstrated interested party status under § 1491(b)(1), the court analyzes jurisdiction for purposes of this opinion under the standing doctrine. However, the court's holding could also be framed under the mootness doctrine. Because Land Shark, operating as Disabled Veterans, no longer possesses the requisite interested party status to bring this case, the court cannot provide Land Shark with effectual relief, and the case is moot. *See Uzuegbunam*, 141 S. Ct. at 796; *see also Acetris*, 949 F.3d at 726-27 (determining that a portion of the case was "moot" because the plaintiff did "not now have standing" to challenge the solicitation at issue). Under either doctrine, this case must be dismissed for lack of jurisdiction.

14

demonstrate standing as an interested party under § 1491(b)(1).  *Asset Prot.*, 5 F.4th at
1365.  Nevertheless, Land Shark may establish Disabled Veterans' standing by
demonstrating that Disabled Veterans can "stand in the shoes" of Land Shark as Land
Shark's "complete successor-in-interest."  *Universal Prot.*, 126 Fed. Cl. at 187 ("[E]ven
if a bidder did not submit a proposal, if it is the complete successor-in-interest to the
actual offeror, the bidder may stand in the shoes and have standing to bring a protest.");
*Centerline*, 148 Fed. Cl. at 336 ("[T]he inquiry is whether the follow-on entity is the
complete successor-in-interest to the actual offeror." (internal quotation omitted)); *L-3
Commc'ns*, 84 Fed. Cl. at 779 (citing *Ala. Aircraft*, 83 Fed. Cl. at 682).  In evaluating
"successor-in-interest" status, this court looks to such factors as whether the actual bidder
and the entity asserting standing are the same legal entity or business unit, *Ala. Aircraft*,
83 Fed. Cl. at 682; *Centerline*, 148 Fed. Cl. at 336 (evaluating "indicia such as merger,
corporate reorganization, the sale of an entire business or the sale of an entire portion of a
business"); *L-3 Commc'ns*, 84 Fed. Cl. at 778-79 (finding standing where the new entity
"embraces the identical business unit which submitted" the original bid), and whether the
change in corporate structure or sale at issue affected the "operational" or "financial"
resources that the entity asserting standing could devote to the subject contract, *Ala.
Aircraft*, 83 Fed. Cl. at 682-84; *Universal Prot.*, 126 Fed. Cl. at 193 (dismissing for lack
of standing where the plaintiff "lack[ed] all of the resources" referenced by the actual
bidder's proposal).[4]

---

[4] Land Shark attempts to distinguish these cases on the ground that they involved post-award bid
protests, while this case involves a pre-award cancellation. Pl.'s Resp. & Reply at 2 n.1.  The

In this case Land Shark has failed to provide sufficient evidence that Disabled Veterans could "stand in the shoes" of Land Shark as a complete successor-in-interest with regard to Land Shark's submitted quotation. *Universal Prot.*, 126 Fed. Cl. at 187. Based on the undisputed facts described above, Land Shark, now operating as Disabled Veterans, no longer owns the assets or employs the personnel that it did when it submitted its quotation in March 2019. Because of this, Land Shark itself "concedes that [Disabled Veterans] is not a complete successor-in-interest to Land Shark." Pl.'s Resp. & Reply at 5-6. Under this court's precedent, therefore, Disabled Veterans "has no right to proceed" with this case. *Centerline*, 148 Fed. Cl. at 336.

In addition to this concession, Land Shark has failed to demonstrate that Disabled Veterans has the operational resources that would allow it to perform the shredding solicitation at issue in accordance with Land Shark's quotation. Land Shark admits that it has sold all of its assets to Dunlap and Underground Vaults and provides no evidence or argument that Disabled Veterans has since acquired its own assets. Pl.'s Resp. & Reply at 2 n.2. Therefore, the quotation submitted by Land Shark for the March 2019 shredding solicitation cannot now apply to Disabled Veterans. For example, the "Capabilities Statement" and "Technical Proposal" in Land Shark's March 2019 quotation describe Land Shark's available trucks, bins, and shredding equipment. AR350, AR355. However, Land Shark sold its trucks, bins, and shredding equipment to Dunlap and

---

court sees no basis for this distinction. In both pre- and post-award bid protests, a plaintiff must establish standing by demonstrating that it is an "actual or prospective bidder." *See e.g.*, *Veterans Electric*, 138 Fed. Cl. at 790 (pre-award cancellation).

Underground Vaults.  Pl.'s Resp. & Reply, Ex. 1 at 6 (selling "4 mobile shred trucks,"
"Tubs and consoles," a "Plant-based shredder/baler/conveyor system," and "all inventory,
supplies, office furniture, computers, software, and other tangible assets" to Underground
Vaults); Mot. to Substitute, Ex. 1 at 34 (Second Amendment to Asset Purchase
Agreement with Dunlap, listing sold vehicles and bins).  Land Shark's quotation,
therefore, does not describe the assets and capabilities of Disabled Veterans, but the
resources of a company that no longer exists. *See Universal Prot.*, 126 Fed. Cl. at 193
(dismissing for lack of standing where the plaintiff "appears to lack all of the resources"
relied on in the original proposal); *Centerline*, 148 Fed. Cl. at 336 (dismissing for lack of
standing where there was no representation that the plaintiff "inherited sufficient assets of
[the actual bidder] to perform").

Likewise, the employees described in Land Shark's "Capabilities Statement" and
"Technical Proposal" do not appear to work for Disabled Veterans.  According to a press
release regarding Land Shark's sale of its commercial business, one of the key employees
listed in Land Shark's "Capabilities Statement" under its "Expertise Summary," as well
as five of its other employees, now work for Underground Vaults.  2d Mot. to Dismiss at
1; AR350 (Capabilities Statement); AR354-55 (describing the qualifications of Land
Shark's service personnel); *see also Universal Prot.*, 126 Fed. Cl. at 191 (holding that the
plaintiff had not established successor-in-interest status where "key personnel" listed in
the proposal to the solicitation were no longer employed by the plaintiff).  In fact, it is
unclear to the court whether Disabled Veterans has any employees or management at all
to devote to the shredding contract, apart from its owner, Mr. Gerard, Jr.  In addition,

17

while stating that Disabled Veterans is in the process of becoming SDVOSB verified, Pl.'s Resp. & Reply at 3, Land Shark has failed to show that Disabled Veterans has achieved SDVOSB status such that it could compete for the contract at issue.[5]  In short, there is no quotation in the record that could serve as the basis for an award to Disabled Veterans.

Land Shark argues that Disabled Veterans may nonetheless "stand in the shoes" of Land Shark because Disabled Veterans has the same corporate structure as Land Shark, could purchase the necessary equipment, and could subcontract the shredding work.  Pl.'s Resp. & Reply at 5-9.  Yet, more is needed to demonstrate complete successor-in-interest status.  That Disabled Veterans may eventually be able to obtain the resources to perform the shredding contact at issue does not demonstrate that Disabled Veterans has the same financial and operational resources as Land Shark, such that it could provide the assets and services promised in Land Shark's previously submitted quotation.  *See Universal Prot.*, 126 Fed. Cl. at 187 (dismissing for lack of standing where the plaintiff could not offer "an identical proposal" to that submitted by the actual bidder).  As discussed above, based on the undisputed facts surrounding Land Shark's asset sales, Disabled Veterans is not able to "stand in the shoes" of Land Shark for the purposes of the challenged solicitation.

---

[5] For these reasons, the court also agrees with the government, 2d Mot. to Dismiss at 8, that Land Shark has not established that Disabled Veterans has a "substantial chance" of being awarded the shredding contract, the second requirement for demonstrating interested party status under § 1491(b)(1).  *Veterans Electric*, 138 Fed. Cl. at 790.

Moreover, Land Shark's contention that Disabled Veterans could subcontract the solicited shredding work, Pl.'s Resp. & Reply at 7, contradicts Land Shark's statement in its quotation that the "intent of Land Shark Shredding (LSS) is to self-perform all contract work." AR376. These contradictory statements additionally confirm that any award to Disabled Veterans could not be grounded in Land Shark's prior quotation.

Based on the undisputed facts described above, Disabled Veterans cannot demonstrate that it is a complete successor-in-interest to Land Shark. Disabled Veterans therefore has not established standing as an interested party. Accordingly, the case must be dismissed for lack of jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, Land Shark's motion to amend the case caption, ECF No. 43, to reflect its current name, Disabled Veterans Security, LLC, is **GRANTED**. However, because Disabled Veterans lacks interested party status, the government's second motion to dismiss, ECF No. 48, is **GRANTED**. The government's first motion to dismiss, ECF No. 14, the parties' cross motions for judgment on the administrative record, ECF Nos. 12, 14, and Land Shark's supplemental motion for judgment on the administrative record, ECF No. 25, are **DISMISSED AS MOOT**. No costs. After amending the case caption, the Clerk is directed to enter judgment accordingly. The caption of the judgment shall reflect Disabled Veterans Security, LLC as the plaintiff.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge